## COSTER *a.* THE NEW YORK & ERIE RAILROAD COMPANY.

*New York Superior Court ; General Term, July,* 1856.

PARTIES.—LEGAL AND EQUITABLE ACTIONS.—RIGHTS OF CO-CON-
TRACTORS.

Four joint owners of a vessel having leased her, two of them, afterwards, brought suit for the hire.

    *Held,* 1. That a legal action could only be sustained by *all four,* suing together.

    2. That *fewer* than all might proceed upon *equitable* rights, and enforce them in equity.

    3. That to entitle themselves to do so, they must *show in their complaint* facts which excused them from joining the other co-owners as plaintiffs—and must join them as defendants, unless it were shown that they had ceased to have any interest in the matters in controversy.

The complaint averred that the defendants had, *with intent to defraud the plaintiffs,* purchased the shares of the other parties interested in the vessel.

*Held,* 1. That the suggestion of fraud was immaterial, since, as respected the plaintiffs, the defendants had a right to purchase those shares.

2. That the averment of the sale of those shares did not constitute any reason for not making the former owners of them parties, although it was a reason for proceeding in equity.

How, in such case, a cause of action for the breach of a clause in the charter party binding the hirers to keep the vessel in repair, should be stated.

A cause of action to restrain some of the part owners of a vessel from disposing of her in derogation of the rights of other part owners, the plaintiffs, cannot be joined with a cause of action for the hire of such vessel.

Appeal from a judgment of the special term upon the several demurrers of defendants to the complaint.

This action was brought by George W. Coster and John E. Andrews, against The New York & Erie Railroad Company and Daniel Drew.

The complaint was, in substance, as follows.

TITLE OF THE CAUSE.

The plaintiffs complaining, &c., show :—That about October 22, 1853, the plaintiffs, and one Cornelius Vanderbilt, and one James B. Townsend, were owners, in common, of the steamboat the Francis Skiddy ; each of the plaintiffs owning two-twentieths of her, Vanderbilt, eleven-twentieths, and Townsend, the remaining five-twentieths. That the plaintiffs, and Vanderbilt and Townsend, being such owners, entered into an agreement with the defendants the New York & Erie Railroad Company, by which the plaintiffs, and Vanderbilt and Townsend, let and delivered to the Company, and the Company hired and took possession of the steamboat, to be run by the Company, upon the Hudson River, for the carriage and transportation of passengers and freight. That by this agreement, the Company promised and agreed to pay all the expenses of running the boat, and to keep her in good repair, and to pay to the plaintiffs, and Vanderbilt and Townsend, for the use of the boat, one hundred dollars per day, during all such times as the plaintiffs, and Vanderbilt and Townsend, should permit the said boat to be and continue in

the possession of the Company, and not withdraw the same from such possession.

That the boat, ever since the time aforesaid, has been in the possession of the Company, under the said agreement, by the permission of the plaintiffs, and Vanderbilt and Townsend, and has never been by them withdrawn from such possession; and that the plaintiffs, and Vanderbilt and Townsend have duly fulfilled all the conditions of said agreement on their part; and that the Company is liable to pay for the use of the boat, one hundred dollars per day, for the whole time that has elapsed since the agreement of hiring; of which sum, each of the plaintiffs is entitled to one-tenth part. But that the Company has not paid the same, or any part thereof; but, though often requested, has hitherto wholly neglected and refused to pay the same, or any part thereof.

And the plaintiffs further complaining, aver on information and belief, that the Company, " craftily and maliciously contriving and intending to cheat and injure the said plaintiffs, and to deprive them of all benefit and advantage from their said interest in the said boat, and all income and profit from the same, under the said agreement, and to prevent the said plaintiffs from maintaining an action at law upon the said agreement, and to withdraw the said boat from navigation, and to expose her to the injury and deterioration incident to being laid up at the dock unemployed and deprived of that care and attention necessary to keep her in good order, and to compel the said plaintiffs to sacrifice their said interests in the said boat, or to sell their said several shares therein at a sum much less than the actual value thereof, on or about November 14, 1853, fraudulently purchased the said five-twentieth parts of the said steamboat, which had, so as aforesaid, belonged to the said James B. Townsend, and on or about March 10, 1854, fraudulently purchased the said eleven-twentieth parts of the said steamboat, which had, as aforesaid, formerly belonged to the said Cornelius Vanderbilt, in the name of one Eli Kelly, who thereby became the nominal holder and owner of said sixteen-twentieth parts of the said steamboat, but in trust for, and for the benefit of the said defendants the New York & Erie Railroad Company." And that about May 18,

1854, the Company caused and procured the said sixteen-twentieth parts of the steamboat to be transferred and conveyed by Kelly to the defendant Daniel Drew, and enrolled in his name, but in trust for, and for the benefit of the Company; and that Drew still continues to hold the boat as aforesaid, fraudulently pretending to be the actual owner thereof, but being in fact the mere trustee and instrument of the Company, in holding the boat.

And the plaintiffs further complaining, aver that the Company and Drew "have fraudulently combined and confederated together, to cheat and defraud them, the said plaintiffs, by the said defendant the New York & Erie Railroad Company, procuring the said defendant Daniel Drew to take the title of the said boat in his name, but in secret trust for the benefit of the said defendant the New York & Erie Railroad Company, and by procuring the said Drew, and the said Drew consenting, to withdraw the said boat from navigation; and the said Drew taking possession of the said boat, as such pretended but fraudulent owner, and laying her up at the dock, and keeping her unemployed, with the fraudulent design of releasing and discharging the said defendant the New York & Erie Railroad Company, from its said obligations and liabilities under the said contract of hiring, and to compel the said plaintiffs to sacrifice their said interests in the said boat, or to sell their said several shares at a sum far below their actual value."

And the plaintiffs further complaining, aver on information and belief, that for the purpose of carrying out the said fraudulent design, about May 19, 1854, Drew, " as such pretended but fraudulent owner of the said steamboat, by the procurement of the said defendant the New York & Erie Railroad Company, took possession of the said boat, and without the privity or consent of the plaintiffs, withdrew her from the navigation upon the Hudson River in which she had been engaged under said agreement of hiring, and laid her up at a dock on the Hudson River, where she has ever since remained wholly unemployed and unused, and where she now remains wholly out of employment, but in the possession and under the control of the said defendant the New York & Erie Rail-

road Company, through and by the means of the said fraudulent combination and confederacy between the said defendants the said New York & Erie Railroad Company and the said Daniel Drew, to cheat and defraud the plaintiffs as aforesaid."

" And the plaintiffs further complaining, say, that said steamboat, by reason of being so as aforesaid fraudulently withdrawn from navigation, and laid up at dock, by the defendants, and from want of care and attention on their part, in her safe keeping and preservation, and from their neglect to keep her in good order and repair, and in a state fit for navigation, as they ought to have done, has been greatly damaged, impaired and deteriorated, and is constantly depreciating in value; that the value of the plaintiffs' interest in said steamboat, prior to the said fraudulent purchase of the said eight-tenths thereof, by the said defendant, the New York & Erie Railroad Company, and her withdrawal from navigation by the defendants, as aforesaid, was fifty thousand dollars, which the plaintiffs apprehend and charge will be wholly lost to them, by the wrongful acts of the defendants, hereinbefore mentioned and set forth."

And the plaintiffs aver that they are entitled to demand and recover from the defendants, in addition to the said hire of the said boat, hereinbefore claimed, the said sum of fifty thousand dollars, being the value as aforesaid, of the interest of the plaintiffs in the boat.

And the plaintiffs further aver that they are citizens of the State of New York, and reside in the city of New York, and that the said steamboat is an American vessel; and that for the purpose of further injuring and defrauding the plaintiffs, and to deprive the plaintiffs of all benefit and advantage from their interests in the said steamboat, and to compel the plaintiffs to sacrifice their interests therein, or to sell the same for a sum much less than their actual value, the defendants are threatening to remove the boat, from the State of New York, and from the United States, beyond the jurisdiction of the courts of this State, and of the United States, into the Province of Canada, within the dominions of the Queen of the United Kingdom of Great Britain & Ireland, and there to sell her, or the interests of the defendants therein, to British subjects;

and to place and keep her permanently within the said Province of Canada; and that should the defendants carry these threats into execution, the rights and interests of the plaintiffs in the vessel, would become worthless, by reason of her being thus placed beyond the legal control of the plaintiffs, and the plaintiffs having no sufficient and adequate remedy for enforcing and securing said rights and interests.

And the plaintiffs further say, that they have requested the said Drew to join them as a party plaintiff, in an action against the Company, to recover the one hundred dollars per day, due as aforesaid, for the use and hire of the boat, pursuant to the said agreement, and for the damage sustained by the owners of the boat, by reason of the wrongful acts and omissions of the Company, and to become a joint plaintiff with them in this action; but by the desire and request of the Company he has declined to become such plaintiff, with the malicious and fraudulent intention of precluding the plaintiffs from enforcing the agreement, and obtaining from the Company the relief to which they are entitled in the premises.

Wherefore the plaintiffs demand that it be adjudged and decreed that the contract of hiring on the part of the Company, of the said steamboat, is still subsisting and in force, and that it be deemed to be of the same validity and obligation, as if it could be enforced in an action at law; and that the Company is liable to pay to the plaintiffs, one-fifth of one hundred dollars per day, for the whole time since the said date of the said contract, and one-fifth of all damages from the deterioration of the said boat, caused by the said wrongful acts and omissions of the defendants; or that if by reason of the facts and circumstances hereinbefore set forth, the said contract has been terminated and become inoperative at law, it is nevertheless, by reason of the said fraudulent acts and doings of the defendants, still subsisting and liable to be enforced in equity, as against both the said defendants; and that the defendants are liable, and shall be adjudged and decreed to pay to the plaintiffs, their proportion of the hire of the boat for the time aforesaid, and the value of the interests of the plaintiffs in the boat; or if this court shall not adjudge the defendants to be liable to pay to the plaintiffs their share of the value of the boat,

that then the defendants be adjudged to put the boat in repair, and in running order; and that it be further adjudged and decreed that she be so kept, and that the defendants continue to pay to the plaintiffs, one-fifth of one hundred dollars per day, for their shares of the hire of said boat, so long as the plaintiffs shall elect to allow the defendants to retain the possession and use of the boat, under the contract; and that the defendants, their agents, &c., be forever restrained from removing or selling the boat beyond the limits of this State, and for further relief, &c.

CUTLER & FLANDERS, <em>attorneys for plaintiffs.</em>

The defendant the New York & Erie Railroad Company, demurred to the complaint, because :—

1. The complaint unites causes of action which cannot properly be joined in the same action.

2. As to all such parts of the complaint as claim other damages than they would be liable to pay under the express contract,—and in particular, damages for injuries to the boat,—the complaint does not state facts sufficient to constitute a cause of action.

3. This court has no jurisdiction of the claim set up by the plaintiffs, (founded upon the fact that the plaintiffs and defendants are part owners of the boat), that they were entitled to an injunction to prevent the removal of her beyond the State, but that cause of action is of admiralty jurisdiction;—and if it were otherwise the complaint does not state facts sufficient to constitute a cause of action.

4. There is a defect of parties plaintiff, in not joining Vanderbilt and Townsend.

The defendant Drew demurred to the complaint, because

1. There is an improper joinder and a defect of parties in said action.

2. There is an improper joinder of causes of action.

3. The contract alleged, is illegal and void.

4. No facts are stated showing that the acts of the defendants are fraudulent or wrongful.

5. The plaintiffs as tenants in common, are not entitled to

maintain an action against their co-tenants for the matters alleged.

6. The complaint does not state facts sufficient to constitute a cause of action.

The demurrers were both allowed at special term, and the defendants had judgment upon them.

From this judgment the plaintiffs now appealed.

*P. Y. Cutler,* for appellants. I. The complaint states one single cause of action. It is a suit in equity, analogous to the suit to cancel a release, or for a declaration that a release was obtained by fraud, and therefore inoperative. And it also states a case for an account between part owners, and for an injunction to prevent the removal of the boat out of the jurisdiction of the court. (*Adams' Eq.*, 26, 240). A co-partner is a trustee for his co-partners, and will be restrained from making a contract which will operate as a fraud upon his co-partners; or if such contract be made with a party cognizant of the fraud, he will be restrained from enforcing it. 1. A familiar instance of such a contract is a note given by one co-partner in the firm name for his own individual debt, to a person knowing the fact and with knowledge that it is a fraud on the firm. 2. A co-partner, who has entered into co-partnership for a definite period, will not be allowed to dissolve the co-partnership before that period has arrived. 3. Even an agreement to enter into co-partnership will be specifically enforced under certain circumstances. (*Story's Eq. Jur.*, 666). 4. No agreement for the fraudulent transfer of the property of the firm, or its choses in action, to a fraudulent vendee or transferee will be enforced. (*Adams' Eq. Jur.*, 240 & n.) 5. Fraudulent releases will be set aside. (*Story's Eq. Jur.*, § 681).

II. The reason why partners are thus dealt with is, that they are mutual trustees for each other, and the same reason applies with equal force to joint tenants and tenants in common, and especially to joint owners of ships and vessels, who are trustees for each other, and whose contract with each other is one resting eminently in good faith. Every contract, therefore, entered into by a majority of the part owners in fraud of the rights of the minority, is absolutely void, and the agree-

ment between Drew and the Erie Railroad Company, was an agreement in fraud of the plaintiff's rights, is so averred, and the averment is admitted by the demurrer. (*Willard's Eq. Jur.*, 190). 1. The rule that a majority of the owners direct as to the employment of the vessel, has no application to such a case as this. The rule is restricted expressly to the case of a vessel unemployed, and does not apply to a case where a vessel is running under a charter party. (3 *Kent*, 152). 2. Nor does the rule ever allow the majority to control upon the question of non-employment, but merely upon the most profitable mode of employment. 3. The reason of the rule defines its limits. It is founded upon the desire to encourage the employment of vessels for the general interest and prosperity of commerce; and as it relates purely to the employment of vessels, has, of course, no relation to the question of the power of part owners to take a vessel out of employment and tie her up at the dock. (*Flanders on Shipping*, §§ 358, 367, 368; *Story on Partn.*, §§ 421, 422, 427.)

III. The cause of action stated in the complaint, being for a fraudulent combination of the defendants to deprive the plaintiffs of their beneficial interest in the vessel itself, as well as in its earnings, is one entire cause of action; but if, by any argument, it could be demonstrated that it combines two causes of action, then the objection ceases to be of any weight, as both causes of action arise out of the same transaction, and both before and since the Code, a court of equity, once having jurisdiction of such a fraudulent transaction, would administer complete relief. (*Code*, § 167).

IV. If there be no fraud in the sale to the Erie Railroad Company, and they had a right to purchase and hold the vessel in the name of Drew, yet the complaint may be maintained, because it contains all the facts requisite to maintain the action as an equitable action for an account between the parties as co-owners. The Railroad Company are chargeable with the one-fifth of one hundred dollars per day to the plaintiffs, so long as they retained possession of the vessel, and for the purposes of this action the contract will be treated as still subsisting, or as subsisting so long as the defendants retain the exclusive possession of the vessel, and do not take the

requisite steps to terminate the contract. This may be viewed as a suit in equity, for an account of the earnings between part owners of a vessel, and the prayer for general relief, is quite sufficient for the purpose.

V. The injunction should be granted, to prevent the vessel from being sent to sea, against the consent of the plaintiffs. (2 *Story's Eq. Jur.*, § 957; Haly *v.* Goodson, 2 *Merivale R.*, 77; Christie *v.* Craig, *Ib.*, 137; *Abbott, Pt.* 1, *ch.* 3, §§ 4, 5.)

VI. The complaint does not state a case of which admirality has exclusive jurisdiction; but states a case of which, a court of equity has jurisdiction. (Darby *v.* Barnes, 9 *Hare*, 369; 2 *Brown's Civ. & Ad.*, 77; Brennan *v.* Preston, 2 *De Gex, M. & G.*, 813; 10 *Hare*, 331; Milborne *v.* Gunther, 8 *Gill*, 92; Cropster *v.* Griffith, 2 *Bland.*, 5.)

VII. The objection as to parties is manifestly frivolous. No action could be maintained at law in the names of Vanderbilt and Townsend, who sold their respective interests to the Erie Railroad Company, in fraud of the plaintiffs' rights, and expressly to defeat such a suit. But the objection shows in a strong light the propriety of instituting this suit in Equity. (*Adams Eq.*, 240). 1. Vanderbilt and Townsend have no interest in the earnings of the vessel, since the purchase of sixteen-twentieths by the Erie Railroad Company, and are not parties to that account. As the action may be sustained for that portion of the claim, without their joinder, it was not necessary or even proper to make them parties. 2. All the defendants are proper parties to the account to be taken of the earnings of the vessel, subsequent to the purchase by the Erie Railroad Company. Drew, as trustee, and the Railroad Company, as part owner, are proper parties to this suit; and the relief, by injunction, is common to all the defendants.

*D. B. Eaton* for the respondents the New York & Erie Railroad Company.—I. On the objection to the whole complaint that it joins improper causes of action, we say that there are four causes of action united : one in contract for the recovery of money, and three in tort. The complaint first sets out a complete cause of action on contract for the recovery of money only, claiming that the alleged agreement

for the hire of the steamboat is still in force, and that the plaintiffs are entitled to recover under it. Then it sets out a ground of action founded in tort,—in a sort of conspiracy to cheat the plaintiffs, and to deprive them of their property,— praying a decree establishing the defendants' future liabilities under the contract. Then is set out a new ground of action in tort, in which the defendants are declared to have become liable to purchase the plaintiffs' interest in the boat; and a decree is asked judicially fixing that liability upon the defendants. Lastly, a distinct cause of action in tort is set out, which, the plaintiffs represent, entitles them to an injunction; and an injunction is prayed accordingly. 1. The ground of action first set forth on the special contract is one to be tried by a jury, but the cause of action demanding a perpetual injunction, and the cause of action demanding a judicial declaration of the present validity of the contract and a special decree that the defendants purchase the interest of the plaintiffs in said boat, present questions of law to be tried by the court; and these cannot be united in the same complaint. (*Code*, §§ 253, 254; 7 *How. Pr. R.*, 134; Alger *v.* Scoville, 6 *How. Pr. R.*, 142). 2. The only ground upon which it can be claimed that these causes of action can be united is that they arise out of " the same transaction or transactions connected with the same subject of action." (*Code*, § 167, *subd.* 1.) This section should be so construed as not to authorize the joinder of actions of tort and contract, or causes of action that would require a trial before different tribunals. The " subject of action " is not the material thing incidentally or otherwise the source of the litigation, but the acts, threats or grievances complained of, the existence or non-existence of which constitute the issuable facts or allegations to be tried. If this construction be not adopted, all the causes and divisions of causes of action mentioned in section 167 of the Code, may be united in the same complaint.

II. The second ground of our demurrer relates to all the grounds of action and parts of the complaint, except so much as sets out the special contract, and the liability of the defendants under that contract. We claim :—1. That when the express contract is proved, the plaintiffs' case is made out, and

the extent of the defendants' liability under it is then a question for the court. All other facts set forth are irrelevant, and cannot be litigated, as the contract fixes the character of the relations between the parties, and the extent of the defendant's liability. 2. That as the plaintiffs insist that the contract is still in force, and the vessel held by the defendants at $100 per day, they cannot recover any damages for her not being in repair at the present moment. If, when the plaintiffs elect to put an end to the contract, the boat is not in repair, or is deteriorated so as to make the defendants liable under the contract, then, and only then, can they maintain an action for damages.

III. The third ground of our demurrer is to those portions of the complaint wherein the plaintiffs, as part owners, claim damages and an injunction against the other part owners of the ship, for neglect to use the ship, and allowing her to go to decay, and proposing to use her on a foreign voyage. 1. If this is to be treated as a ground of action known as *licitation* in admiralty,—*i. e.* an attempt by the minority part owners to get protection against the acts of the majority,—it is not a matter of which this court has jurisdiction, but it belongs to an admiralty court. (*Story on Partn.*, §§ 438, 439 & *n.*; *Abbott on Shipping*, *Pt.* 1, *ch.* 3, § 3; 3 *Kent's Comm.*, 151, 152; Warring *v.* Clark, 8 *How.*, *U. S.* 441; *Benedict's Adm. Pr.*, 274, 481, 482, § 274). The constitution gives jurisdiction of such cases to United States courts, and the judiciary act of 1789, § 9, does not apply to this case, for it was never of common law jurisdiction. (Warring *v.* Clark, 8 *How.*, *U. S.*, 441). 2. It being a case of established admiralty jurisdiction, of which the common law courts have not taken cognizance, the jurisdiction of the Admiralty Court is exclusive. (1 *Kent's Comm.*, 377, 408, 412; Martin *v.* Hunter's Lessee, 1 *Wheat.*, 304; *Story on Partn.*, § 438; Strelly *v.* Wilson, 1 *Vern.*, 298.) Even if this court had any jurisdiction to entertain a complaint for such a cause of action, if properly pleaded, we insist that there is no ground of action before the court. One part owner of a vessel cannot recover of another for damages caused by the carelessness or negligence of that part owner. Nor does any action lie for fraudulently sending a vessel to foreign

parts; much less will an injunction be granted. (Moody *v.* Buck, 1 *Sandf. S. C. R.*, 304, *Flanders on Shipping*, § 399; *Abbott on Shipping*, *Pt.* 1, *ch.* 3 § 3.)

IV. The fourth ground of demurrer is the non-joinder of other parties interested in the suit, viz. Vanderbilt and Townsend. 1. The complaint first sets out a joint contract made by the plaintiffs and Vanderbilt and Townsend, parties of the first part, and the New York & Erie Railroad Company, parties of the second part, and a promise of the Company to pay to the joint. parties of the first part $100 per day for the use of the boat; no other promise is anywhere alleged. This contract is alleged to be still in force. It is not anywhere alleged that either Townsend or Vanderbilt has ever parted with their interest under this contract; nor that the plaintiffs act on their behalf. The statement that several months after the delivery of the boat to the New York & Erie Railroad Company, the shares of Vanderbilt and Townsend were sold, does not have the effect of making the contract several, or of transferring the interests of Vanderbilt and Townsend in the compensation to be recovered under the contract. On the contrary, it appears that nothing has ever been paid since the boat was delivered, (so that in any event Townsend and Vanderbilt would be interested in the earnings of the boat to the date of this sale,) and the boat is said to still remain in the possession of the New York & Erie Railroad Company, and this is declared to be by reason of the "*permission of the said plaintiffs and the said Cornelius Vanderbilt and the said James B. Townsend, and that they duly fulfilled all the conditions of said agreement on their part,*" &c. From this it *affirmatively* appears that the sale of their interest did not, even in the estimation of the plaintiffs, sever the contract or terminate their interest in the earnings of the boat. The earnings of the boat belong jointly to the plaintiffs and Vanderbilt and Townsend; and the New York & Erie Railroad Company cannot be made liable in separate actions to each, but all must join or the plaintiffs must acquire the interests of the other parties by assignment. Whatever may be the rights of part owners as between themselves, this contract, as to third persons at least, was a contract by

the owners as co-partners, and they must sue and may be sued thereon, as such, and not otherwise. Part owners of ships are co-partners as to the earnings of the ship, and no action can be maintained by one against another until an account is taken. (Nichol *v.* Mumford, 4 *Johns. Ch.*, 522; Mumford *v.* Nichol, 20 *Johns.*, 611; *Story on Partn.*, §§ 441, 444, 449; Paton *v.* Randolph, 1 *Gilpin R.*, 457; Holderness *v.* Shackels, 8 *Barn., & C.*, 612.

*Charles Jones* for the respondent Drew.

By the Court—Woodruff, J.—This case comes on to be heard upon an appeal from the judgment of the special term in favor of the defendants, upon their several demurrers to the complaint.

The complaint, in the first nineteen folios thereof, avers that the plaintiffs and Cornelius Vanderbilt and James B. Townsend were, on October 22, 1853, owners of the steamboat Francis Skiddy, in the proportions following:—Coster and Andrews the plaintiffs each two-twentieths, Vanderbilt eleven-twentieths, and Townsend five-twentieths. That being such owners, they on the day aforesaid entered into an agreement with the defendants, the New York & Erie Railroad Company, by which they let and delivered to the Company the said boat, and the Company hired and took possession thereof and agreed to pay all expenses of running the same and to keep her in good repair, and to pay to the said plaintiffs and Vanderbilt and Townsend for the use thereof, one hundred dollars per day, "during all such times as the said plaintiffs and Vanderbilt and Townsend should permit the said boat to be and continue in the possession of the said Company and not withdraw the same from such possession." That from the date of such agreement until now, the said boat has been and now is in the possession of the Company under such agreement, by the permission of the plaintiffs and Vanderbilt and Townsend, and has never been withdrawn by them. That the said plaintiffs and Vanderbilt and Townsend have duly performed, &c.; but that the said Company have never paid the .aid sum of one hundred dollars per day for the use of the

said boat. That the said Company are liable to pay the amount aforesaid and that the plaintiffs are each entitled to one-tenth part thereof, and that the Company refuse to pay the same or any part thereof."

This is a plain statement of a good and sufficient cause of action on a special contract, and for the recovery of money, which upon the facts stated is due to the plaintiffs and Vanderbilt and Townsend. The contract set forth is single and entire. The agreements on the part of the Company are to and with the plaintiffs and Vanderbilt and Townsend jointly and not severally. There is no intimation that the defendants have undertaken to pay the charter money to the several owners in the proportion of their respective interests in the boat.

We know of no rule of pleading, nor any principle of law authorizing the plaintiff to maintain a separate action for their particular portion of these moneys without making Vanderbilt and Townsend parties. A joint cause of action vested in two or more, cannot be split up into several, at the option of those in whom it is vested. The Company are not liable to be vexed with two or more separate suits for the same cause of action, and, having, as the case may be, litigated the claim of two of the owners, to be again called upon to litigate the same matters under the same joint contract with Vanderbilt, and again with Townsend. The circumstance that the consideration for the agreement by the Company was the use of a steamboat or vessel of which the defendants are part owners, makes no difference. Besides, if there was any warrant for permitting such an agreement to be treated as in effect running to each severally, and entitling each to recover the proportion of the charter money, which as between the co-owners would fall to his share, (which however cannot be conceded in this case,) then the plaintiffs themselves could not join in the action. If their interests are several and their rights several, their title to the money to be recovered by each respectively is several, and the causes of action thus assumed to be several, cannot be joined.

But in truth, as before observed, the company's agreement is single,—it is made with all,—the title to recover under it is vested in all. The money due upon the agreement belongs to

all (irrespective of the state of the accounts between them, and the respective shares into which it may be divisible when recovered, with which the Company have nothing to do,) and all must unite in the action brought to enforce the agreement and recover the charter money, unless some facts are stated in the complaint which excuse the plaintiffs from uniting Vanderbilt and Townsend with them as plaintiffs. If that be done, then notwithstanding the rule be as we have stated it in actions at law, the plaintiffs may unquestionably proceed upon their equitable rights, and in equity enforce them and recover their money. But even then, they must make Vanderbilt and Townsend parties to the action as defendants, unless they also show that Vanderbilt and Townsend have ceased to have any interest in the matters in controversy.

What facts then further appear in this complaint which are relied upon as an excuse for not joining them as plaintiffs?

The only further statement in the complaint affecting Vanderbilt and Townsend in any measure, and therefore the only one that bears upon the question above considered, is, that afterwards the Company with malicious intent to cheat and injure the plaintiffs, &c., &c., *fraudulently purchased* from Vanderbilt and Townsend their respective five and eleven-twentieth parts of the said steamboat in the name of Eli Kelly, but in trust for and for the benefit of the said Company.

Whether this purchase was made with a bad motive or not, is quite immaterial; the motive furnishes no ground of appeal to any court, unless nor until some wrongful *act* is done, attempted, or threatened, which act it is proper should be either restrained or redressed. The act charged here is a perfectly lawful act, a purchase. The plaintiffs have no cause of complaint in that respect; Vanderbilt and Townsend had a right to sell, the Company had a right to buy, and unless the plaintiffs mean that the purchase was a fraud upon Vanderbilt and Townsend, no wrong was done to any one thereby. When Vanderbilt and Townsend come into court alleging that the purchase was fraudulent, the allegation may be material. This averment of fraud therefore has no bearing upon the question whether Vanderbilt and Townsend should be parties to the action. The plaintiffs do not, and could not upon any

facts stated, ask to have the sale set aside, and if they did they must make Vanderbilt and Townsend parties, either plaintiffs or defendants.

The case stands then, upon the facts averred, thus :—that Townsend on November 14, 1853, and Vanderbilt on March 10, 1854, sold to the defendants (who purchased in the name of Eli Kelly) their respective twentieth parts of the said boat. And the plaintiffs' claim to recover for not only the money accrued and payable for the use of the boat since those dates, but also from the day the original agreement was made ; that is over thirteen thousand dollars accrued before Vanderbilt sold his share of the boat. And there is not an intimation in the complaint that Townsend for the period in which he continued to be an owner and Vanderbilt for the residue of the time, are not jointly interested with the plaintiffs in the recovery of that money. The averment of the sale of the boat does not therefore constitute any reason for not making Vanderbilt and Townsend parties.

If not made parties plaintiff, they should have been made defendants. There is no averment that they refuse to join in the action. There is no averment that they have been guilty of any fraud, or are parties to, or are even cognizant of, any fraud done, attempted or contemplated by the Company. The demurrer for want of these parties was therefore properly sustained.

In. reference to the cause of action now in question, the purchase of the boat by the company if true as alleged, is undoubtedly a sufficient reason for proceeding by what would formerly have been termed a bill in equity. The union of interest in the Company as owner and hirer would so embarrass an action at law, that adequate justice could not be done. But all parties interested in the charter money should be before the court.

2. The next cause of action, or combination of facts upon which the plaintiffs rest a claim to recover, consists in averments that the Company, in May, 1854, caused and procured the said sixteen-twentieths of the said boat to be conveyed by the said Eli Kelly to the defendant, Daniel Drew, (the said Drew fraudulently pretending to be the owner, but being in

fact the mere trustee and instrument of the Company), and that Drew and the Company have fraudulently combined to cheat the plaintiff; the said Company procuring the said Drew to consent, and Drew consenting to withdraw the said boat from navigation—the said Drew taking possession, laying her up at the dock, and keeping her unemployed, with the fraudulent design of releasing and discharging the said contract of hiring; and that the said Drew, on or about May 19, 1854, as such pretended but fraudulent owner, took possession of the boat, and without the plaintiff's consent, withdrew her from the navigation in which she had been employed under the agreement of hiring, laid her up at a dock, where she has ever since remained unemployed and not used, but in the *possession* of the Company, through and by means of the said fraudulent combination and confederacy with Drew. And the plaintiffs then aver, that " by reason of being so fraudulently withdrawn from navigation, and laid up at dock by the defendants, and from want of care and attention on their part in her safe keeping and preservation, and from their neglect to keep her in good order and repair, and in a state fit for navigation, *as they ought to have done*, the said *boat* has been greatly damaged, impaired, and deteriorated in value."

The plaintiffs then add, that their shares of the boat were worth fifty thousand dollars before the said purchase by the Company and the said withdrawal from navigation, which they charge will be lost by the wrongful acts mentioned, and which they claim to recover, in addition to the said hire of the boat from the defendants herein.

The distinct and only cause of action here alleged is the withdrawal of the boat from navigation, laying her up in the dock, and the damage and deterioration in value arising from that and from neglect and want of repairs, and this is made the basis of a claim to recover her full value.

Now if this cause of action is claimed to arise on the contract alleged in the complaint, it is liable to two difficulties:—In the first place, no agreement by the Company to employ the boat upon the Hudson River or elsewhere is alleged in the complaint. The promise and agreement by the Company, is, to pay all expenses of running the boat and to keep her

in good repair, and to pay one hundred dollars per day for the hire thereof, so long as the owners should permit her to remain in the possession of the Company. This undoubtedly discloses an intention to run the boat, and binds the Company to pay the expenses, if any, so incurred, but so long as the Company retain possession of the boat they must pay the hire, whether they run the boat or not; and so long as the Company pay the hire they were at liberty to run her or not, at their pleasure.

And as respects the agreement to keep the boat in repair, we doubt very much the sufficiency of the averment in that respect. It is not stated in any manner which can be made the subject of a distinct issue by denial, that the Company have not kept the boat in repair. That and that only was their agreement, and it is not stated that they have not done so. But the statement is, that the boat "has been greatly damaged, impaired and deteriorated, and is constantly depreciating in value, *by reason* of being so fraudulently *withdrawn* from navigation, and laid up at dock by the defendants, and from *want of care* and *attention* on their part in her *safe keeping* and preservation, and from their neglect to keep her in *good order* and *repair* and in a state *fit for navigation*." A denial of this averment would, it is true, form an issue upon the fact of damage and deterioration, from the combination of causes stated, but it would not be adapted to put in issue what, if it is claimed, should be averred as a fact, viz., that the Company have not kept the boat in repair.

Besides, these facts do not warrant the relief prayed. If this cause of action is to be regarded as arising under the *contract* set forth in the complaint, the defendant Drew is not liable upon this cause of action at all. He has never contracted with the plaintiffs, and by *virtue* of the *agreeement* in the complaint he is not liable to damages. Nor does the averment that the boat is constantly depreciating in value, and that the plaintiffs apprehend her value *will be* wholly lost to them, warrant any recovery of her *value* as such. If the plaintiffs recover upon the *contract*, they recover the damages actually sustained by a breach thereof, not the value of the boat, as such, nor damages which they apprehend will in the *future* be sustained.

And it is moreover at least doubtful, so long as the Company retain the possession of the boat, and pay or are called upon to pay the hire, (and both of these are alleged and insisted upon by the plaintiffs,) whether an action will lie on the averment for not keeping the boat in repair; or if in form it may possibly be sustained, whether any more than nominal damages can be recovered. It is, however, not necessary to pursue that inquiry.

The only ground upon which Drew can be charged upon this cause of action (if at all), and the only ground upon which the Company can be charged with him for the value of the boat, is that their fraudulent acts are tortious, and tend to the destruction of the property, or amount to a conversion of the property to their own use. This was not insisted upon by the plaintiffs' counsel on the argument, and we apprehend it cannot be successfully insisted upon. (See Mudy *v.* Buck, 1 *Sandf.*, 304, and cases there cited). And if it could, then the complaint is bad, because it attempts to join such a cause of action with a cause of action arising upon contract only.

3. The remaining cause of action or ground for relief consists in averments that the plaintiffs are citizens of this State, residing in the city of New York, and the boat is an American vessel, and that for the purpose of defrauding the plaintiffs, &c., the defendants threaten to remove the said boat from the State of New York and from the United States to Canada, and there to sell her or the interests of the defendants therein to British subjects, and keep her permanently beyond the jurisdiction of the courts of this State and of the United States; and that if the defendants should carry such threats into execution, the rights and interests of the plaintiffs in the vessel would become worthless.

Viewing this action as founded upon contract only, there is nothing in this averment calling for the interposition of the court as a court of equity in aid of the recovery of the money claimed; the relief prayed for, so far as it rests upon these last averments, is an injunction. If it be conceded that, upon the facts alleged, the plaintiffs would be entitled to come into this court as a court of equity, and seek and have an injunction to prevent the removal of the boat beyond the jurisdiction of the

State, there would be no propriety in uniting an inquiry into the right and power of the owners of a major part of the vessel to manage and control the same, with the claim to recover for the use of the boat. The act threatened does not render nor tend to render the judgments which the plaintiffs seek for the hire of the boat ineffectual, nor is there anything stated showing it to be at all doubtful that the Company are able to pay and will pay whatever they may be adjudged to pay.

So far as this part of the complaint proceeds upon the idea that, as part owners, the plaintiffs may come into a court of equity to restrain other part owners in the management or control of the vessel, it cannot be united with the action on a special contract for the hire thereof. I know of no rule of law or equity forbidding part owners selling their own interest in the vessel to any persons they may see fit, whether citizens or foreigners. But whether this court should, as a court of equity, take jurisdiction of the matter of the control and use of the vessel, or whether Admiralty has exclusive, as it manifestly has appropriate jurisdiction,—on that subject we do not find it necessary to speak, since we are of opinion that a ground of jurisdiction of this sort, between part owners as such, is not properly joined with an action on the agreement set forth in the complaint for the hire of the vessel, to recover the money due therefor.

Although we think that the relief sought cannot be had against the defendant Drew as prayed, we do not think he is an improper party to the suit. The plaintiffs pray that both defendants be adjudged and decreed to pay the whole sum due for the hire of the boat. The defendant Drew is in no degree whatever interested in, still less liable for any of the charter money accrued before the title to sixteen-twentieths of the boat was transferred to him. And as to what has since accrued, he is no more liable, for if he is owner in fact, and has done nothing to discharge the Company from their obligation to pay, he, instead of paying, will be entitled to receive from the Company a very large sum. But if the facts be as alleged, and he only holds for the benefit of the Company, still he has never agreed to pay to the defendants the hire of the boat. It is not alleged that he has collected it, or

any part of it, and is liable to account to the other part owners therefor. A liability to such an accounting, and an action therefor could not be joined with an action against the Company for the hire unpaid, since in that accounting the Company would have no interest.

I have already suggested that he is no more liable on the agreement for a neglect to repair. He has not agreed to repair; and a proceeding to recover damages against him as part owner in possession for neglect or carelessness, if it could be sustained, could not be joined with this action on the present agreement.

Still, in respect to the matter of the money due for the use of the boat, I apprehend that, holding the legal title to sixteen-twentieths thereof, he is not an improper party, though it may be that if all the facts stated in the complaint be taken to be true, and those sixteen-twentieths belong to the Company, Drew would be a formal party only, and it might not be erroneous not to join him.

Our conclusion is that the demurrer, for the reasons stated above, was properly sustained, and that the judgment thereon should be affirmed. Doubtless, leave would have been given to amend if it had been desired by the plaintiffs, but the propriety of giving such an indulgence does not properly arise on this appeal.

Judgment affirmed with costs.